IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No.: 16-cv-03095-LTB

MICHAEL ROLAND,

        Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

        Defendant.

_____

ORDER
_____

Plaintiff Michael Roland appeals the final decision of the Acting Commissioner of Social Security ("SSA") denying his application for disability insurance benefits under Title II Social Security Act, 42 U.S.C. § 31 *et seq*. I have considered the parties' briefs (ECF Nos. 14–16) and the administrative record (ECF No. 10) ("AR"). Oral argument would not materially assist me in determining this appeal.

Mr. Roland argues the administrative law judge (ALJ) erred when she determined there were jobs in substantial numbers that he could perform, when she applied the Medical Vocational Guidelines (the Grid rules), and when she evaluated the opinion of his treating physician. As I describe below, I discern no error by the ALJ. I accordingly AFFIRM the decision of SSA.

## I. Background

### A. Procedural History

In June 2013, Mr. Roland filed an application for disability insurance benefits with SSA, alleging disability beginning November 11, 2009. AR 151–57. After SSA initially denied his claim, AR 80–95, Mr. Roland requested a hearing before an ALJ, AR 99. The hearing took place on April 13, 2015. AR 35–78. On May 14, 2015, the ALJ denied Mr. Roland's claim, concluding he was not disabled within the meaning of the Social Security Act. AR 14–34. Mr. Roland asked SSA's Appeals Council to review the ALJ's decision. AR 7–13. On November 9, 2016, the Appeals Council denied review, AR 1–6, making the ALJ's decision the final decision of SSA, *see Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). On December 16, 2016, Mr. Roland timely filed this appeal. (ECF No. 1.) I have jurisdiction pursuant to 42 U.S.C. § 405(g).

## II. Legal Standards

### A. SSA's Five–Step Process for Determining Whether a Claimant Is "Disabled"

A claimant is "disabled" under Title II of the Social Security Act if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). SSA has established a five-step sequential evaluation process for determining whether a claimant is disabled and thus entitled to benefits. 20 C.F.R.

§ 404.1520.

At step one, SSA asks whether the claimant is presently engaged in "substantial gainful activity." If he is, benefits are denied and the inquiry stops. § 404.1520(b). At step two, SSA asks whether the claimant has a "severe impairment"—that is, an impairment or combination of impairments that "significantly limits [his] physical or mental ability to do basic work activities." § 404.1520(c). If he does not, benefits are denied and the inquiry stops. If he does, SSA moves on to step three, where it determines whether the claimant's impairment(s) "meet or equal" one of the "listed impairments"—impairments so severe that SSA has determined that a claimant who has them is conclusively disabled without regard to the claimant's age, education, or work experience. § 404.1520(d). If not, SSA goes to step four. At step four, SSA determines the claimant's residual functional capacity ("RFC")—that is, what he is still able to do despite his impairments, and asks whether the claimant can do any of his "past relevant work" given that RFC. § 404.1520(e). If not, SSA goes to the fifth and final step, where it has the burden of showing that the claimant's RFC allows him to do other work in the national economy in view of his age, education, and work experience. § 404.1520(g). At this step, SSA's Grid rules may mandate a finding of disabled or not disabled without further analysis based on the claimant's age, education, and work experience. 20 C.F.R. Pt. 404, Subpt. P, App. 2. In contrast with step five, the claimant has "the burden of establishing a prima facie case of disability at steps one through four." *Doyal*, 331 F.3d at 760.

B.   Standard for Reviewing SSA's Decision

My review is limited to determining whether SSA applied the correct legal standards and whether its decision is supported by substantial evidence in the record. *Williamson v. Barnhart*, 350 F.3d 1097, 1098 (10th Cir. 2003). With regard to the law, reversal may be appropriate when SSA either applies an incorrect legal standard or fails to demonstrate reliance on the correct legal standards. *See Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996). With regard to the evidence, I must "determine whether the findings of fact . . . are based upon substantial evidence, and inferences reasonably drawn therefrom. If they are so supported, they are conclusive upon the reviewing court and may not be disturbed." *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970). "Substantial evidence is more than a scintilla, but less than a preponderance; it is such evidence that a reasonable mind might accept to support the conclusion." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). I may not reweigh the evidence or substitute my judgment for that of the ALJ. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991).

### III. The ALJ's Decision

The ALJ followed the five-step analysis outlined above. At step one, the ALJ found that Mr. Roland had not engaged in substantial gainful activity from his

4

alleged onset date of November 11, 2009, and met the insured requirements of the Social Security Act through December, 31, 2014. AR 19. At step two, the ALJ found Mr. Roland had several severe impairments: L3–L4 degenerative disc disease, left hip osteoarthritis and bursitis, right shoulder articular surface tear, left shoulder tendinosis, right thumb CMC joint arthritis, and status post left thumb arthroplasty and revision. *Id.* At step three, the ALJ concluded that Mr. Roland's impairments did not meet or equal any of the "listed impairments" that mandate a conclusive finding of disability under the social security regulations. AR 19–20. At step four, the ALJ found that Mr. Roland had the following RFC:

> [T]he claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that he can lift and carry 10 pounds occasionally and 10 pounds frequently [sic], sit for at least 6 hours in an 8 hour day, stand and/or walk at least 6 hours in an 8 hour day, occasionally climb stairs and ramps, never climb ladders, ropes and scaffolds, frequently balance, occasionally stoop, kneel, crouch, and crawl, occasionally reach overhead with the right upper extremity, never reach overhead with the left upper extremity, and occasionally handle, grasp and finger bilaterally.

AR 20–21. The ALJ determined that Mr. Roland could not return to his past relevant work and proceeded to step five. AR 27. At step five, the ALJ determined that considering his age, education, work experience, and RFC, jobs existed in significant numbers that Mr. Roland could perform, including a call out operator, a dealer account investigator, and a furniture rental consultant. AR 28. The ALJ accordingly concluded that Mr. Roland was not disabled under the Social Security Act. AR 29.

5

## IV. Analysis

A.   Jobs in Significant Numbers

Because Mr. Roland cannot not return to his past relevant work, SSA had the burden of showing that his RFC allows him to do other work in the national economy in view of his age, education, and work experience. 20 C.F.R. § 404.1520(g). At the hearing, a vocational expert testified that someone with Mr. Roland's RFC could perform the "representative" light occupations of dealer account investigator (15,000 national jobs) and furniture rental consultant (11,800 national jobs), and the unskilled sedentary occupations of call out operator (11,600 jobs) and surveillance systems monitor (18,000 national jobs). AR 69–71.

The Tenth Circuit has not drawn a bright line "establishing the number of jobs necessary to constitute a 'significant number.'" *Raymond v. Astrue*, 356 Fed. App'x 173, 178 n.2 (10th Cir. 2009) (quotation omitted) (unpublished). However, courts in this circuit have indicated that fewer jobs than those identified here constitute a significant number. *See Rogers v. Astrue*, 312 F. App'x 138, 142 (10th Cir. 2009) (unpublished) (suggesting that 11,000 jobs in the national economy was a significant number); *Wamsley v. Astrue*, 780 F. Supp. 2d 1180, 1193 (D. Colo. 2011) (holding that 11,400 jobs in the national economy was a significant number). In light of this case law and the vocational expert's testimony that the light exertion jobs he identified were only a "representative" sample, I hold that SSA met its burden of showing that jobs existed in substantial numbers that Mr. Roland is able to perform.

6

I also disagree with Mr. Roland that the ALJ was required to consider the factors the Tenth Circuit identified in *Trimiar v. Sullivan*, 966 F.2d 1326 (10th Cir. 1992) to determine that jobs existed in the national economy that Mr. Roland can perform. In *Trimiar*, the Tenth Circuit identified several factors that could help determine whether 650–900 jobs in Oklahoma met the "substantial numbers" requirement: (1) the level of claimant's disability; (2) the reliability of the vocational expert's testimony; (3) the distance claimant is capable of traveling to engage in the assigned work; (4) the isolated nature of the jobs; and (5) the types and availability of such work. 966 F.2d at 1330. Unlike in *Trimiar,* the ALJ here relied on national jobs, not state or regional jobs, so she was not required to discuss the *Trimiar* factors. *See Raymond*, 356 Fed. App'x 173, 178 n.2.

### B. Grid Rules

Mr. Roland also argues that the ALJ wrongly applied the Grid rules when analyzing whether he was disabled. The Grid rules consider a claimant's RFC to perform work (e.g., sedentary, light, medium or heavy) in relation to age, education, and work experience. A series of rules then set forth presumptions of disability or no disability, depending upon whether there are significant numbers of jobs in the national economy that a claimant with that particular configuration of characteristics can perform. 20 C.F.R. Pt. 404, Subpt. P, App. 2.

Mr. Roland argues that because he was closely approaching advanced age (ages 50–54), he could no longer perform his past relevant work, and he had no transferrable skills, the ALJ should have found him disabled under Grid rule

7

201.14. Grid rule 201.14 directs a finding of disability for someone who is closely approaching advanced age, can no longer perform any past relevant work, has no transferrable skills, and can only perform sedentary work. By contrast, Grid rule 202.14 directs a finding of non-disability for someone with those same characteristics who can perform light work as well as sedentary work.

The ALJ determined Mr. Roland could perform light work, with some additional restrictions, meaning his RFC is neither sedentary nor light. Thus, neither rule's 201.14 presumption of disability nor rule 202.14's presumption of non-disability applies. *See* Titles II & XVI: Capability to do Other Work—The Medical-Vocational Rules as a Framework for Evaluating Exertional Limitations Within a Range of Work or Between Ranges of Work, SSR 83–12, 1983 WL 31253, at *1–2 ("The table rules do not direct such conclusions when an individual's exertional RFC does not coincide with the exertional criteria of any one of the external ranges, i.e., sedentary, light, medium . . . ."). Rather, the ALJ must determine whether the additional restrictions erode the occupational base, often based on the testimony of a vocational expert. *Id.* The vocational expert testified that despite the additional exertional limitations on Mr. Roland's RFC, he could still perform at least two different representative "light" occupations, both of which existed in substantial numbers in the national economy. AR 69–70. The ALJ reasonably relied on this testimony to determine that Mr. Roland was not disabled.

### C. RFC

Mr. Roland also argues that ALJ erred in assessing his RFC because she

8

improperly discounted the opinion of his treating physician, Dr. Larry Doehring. RFC represents "the most [the claimant] can still do despite [her] limitations," 20 C.F.R. § 404.1545(a)(1), and must include "all of [the claimant's] medically determinable impairments," *id.* § 404.1545(a)(2). An RFC determination is an administrative assessment based on all the evidence of how the claimant's impairments and related symptoms affect his or her ability to perform work–related activities. *Young v. Barnhart*, 146 Fed. App'x 952, 955 (10th Cir. 2005) (unpublished). The final responsibility for determining the claimant's RFC rests with the Commissioner and is based upon all the evidence in the record. *Id.*; *see also* Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96–8P, 1996 WL 374184, at *7 (indicating that the RFC assessment by the ALJ must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence).

The amount of deference due to an opinion about a claimant's impairments varies depending on its source. An ALJ should "[g]enerally . . . give more weight to opinions from [a claimant's] treating sources." 20 C.F.R. § 404.1527(c)(2). In deciding how much weight to give a treating source opinion, an ALJ must complete a two-step inquiry. *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). An ALJ must first determine whether the opinion qualifies for "controlling weight." *Id.* An opinion from a treating source is entitled to controlling weight if it is both "well–supported by medically acceptable clinical and laboratory diagnostic

techniques" and consistent with other substantial evidence in the record. *Id.*; Titles II & XVI: Giving Controlling Weight to Treating Source Medical Opinions, SSR 96-2P, 1996 WL 374188, at *1. Even if not entitled to controlling weight, a treating source's opinion "may still be entitled to deference." *Id.* The amount of deference due depends on weighing several factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

20 C.F.R. §§ 404.1527(c), 416.927(c). "It is the ALJ's duty to give consideration to all the medical opinions in the record. She must also discuss the weight he assigns to such opinions." *Keyes–Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citation omitted). An ALJ may dismiss or discount an opinion from a treating source only if she provides "specific, legitimate reasons" for the rejection. *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (quotation omitted).

Dr. Doehring opined that Mr. Roland had extreme limitations, including that he had a limited range of motion and could rarely lift even less than ten pounds. AR 697–701. He also opined that his pain would constantly interfere with his ability to work. AR 698. The ALJ gave specific reasons for rejecting his opinion, supported by specific citations in the record. First, the ALJ accurately noted that no other treating or examining physician opined that Mr. Roland's pain was so severe that it

impeded his ability to perform low-stress work. AR 25. Second, the ALJ accurately noted that another doctor who treated Mr. Roland did not impose such limiting restrictions. AR 25–26. Third, the ALJ observed that Mr. Roland told a different physician that he could control his pain with a modest amount of painkillers. AR 26. Fourth, the ALJ pointed out that Dr. Doehring's opinion was inconsistent with that of Mr. Roland's treating surgeon. AR 26. Thus, the ALJ provided several specific, legitimate reasons, supported by the record, for discounting Dr. Doehring's opinion and arriving at the RFC she did. *See Chapo*, 682 F.3d at 1291. Because the ALJ's determination is supported by substantial evidence in the record, it will not be reversed.

## V. Conclusion

For the above reasons, the SSA's decision is AFFIRMED.

Dated: February  16 , 2018, in Denver, Colorado.

BY THE COURT:

 s/Lewis T. Babcock  
LEWIS T. BABCOCK, JUDGE